UNITED STATES DISTRICT COURT

WEESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

MARK BALLARD and SHARI BALLARD,

Plaintiffs,

v.

NOVO NORDISK A/S, NOVO NORDISK                    CASE NO. _____

NORTH AMERICA OPERATIONS A/S,                     JURY DEMANDED

NOVO NORDISK US HOLDINGS INC.,

NOVO NORDISK US COMMERCIAL

HOLDINGS INC., NOVO NORDISK INC.,

NOVO NORDISK RESEARCH CENTER

SEATTLE, INC., and NOVO NORDISK

PHARMACEUTICAL INDUSTRIES LP,

Defendants.

---

**COMPLAINT FOR DAMAGES**

---

COME NOW, Plaintiffs, MARK BALLARD and SHARI BALLARD, by and through counsel of record, and would show the Court:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiffs, Mark Ballard and Shari Ballard, at all times relevant herein, were residents of Lauderdale County, Tennessee.

2.      Defendant, Novo Nordisk A/S, is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark.

3.      Defendant, Novo Nordisk North America Operations A/S, is a company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark.

4.      Upon information and belief, Defendant, Novo Nordisk US Holdings Inc., is a Delaware corporation with a principal place of business at 103 Foulk Road, Wilmington, Delaware.

5.      Upon information and belief, Defendant, Novo Nordisk US Holdings Inc. is wholly owned by Defendant Novo Nordisk A/S.

6.      Upon information and belief, Defendant, Novo Nordisk US Commercial Holdings Inc. is a Delaware corporation with a principal place of business at 103 Foulk Road, Wilmington, Delaware.

7.      Upon information and belief, Defendant, Novo Nordisk US Commercial Holdings Inc., is wholly owned by Defendant Novo Nordisk US Holdings Inc.

8.      Defendant, Novo Nordisk, Inc., is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey.

9.      Upon information and belief, Defendant Novo Nordisk Inc., is wholly owned by Defendant, Novo Nordisk US Commercial Holdings, Inc.

10.      Defendant, Novo Nordisk Research Center Seattle, Inc., is a Delaware corporation with a principal place of business at 530 Fairview Ave. N., Seattle, Washington.

11.      Defendant, Novo Nordisk Pharmaceutical Industries LP, is a Delaware corporation with a principal place of business at 3611 and 3612 Powhatan Road, Clayton, North Carolina.

12.     Defendant Novo Nordisk Pharmaceutical Industries LP is the labeler for Ozempic and Saxenda, and Defendants Novo Nordisk A/S and Novo Nordisk Inc. are also identified on Ozempic's label.[1] These Defendants are also identified as labelers for Saxenda.

13.     Defendants, Novo Nordisk Inc., Novo Nordisk US Commercial Holdings Inc., Novo Nordisk US Holdings Inc., Novo Nordisk A/S, Novo Nordisk North America Operations A/S, Novo Nordisk Research Center Seattle, Inc., and Novo Nordisk Pharmaceutical Industries LP are referred to collectively herein as "Novo Nordisk."

14.     Novo Nordisk also designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the drugs Ozempic and Saxenda. Alternatively, Novo Nordisk has acquired the entity/entities who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and/or Saxenda and is, thus, the successor to such entity/entities.

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which Plaintiffs reside, which is Tennessee.

16.     This Court has personal jurisdiction over Defendants, consistent with the United States Constitution and Tenn. Code Ann. § 20-2-214 (Tennessee's "long-arm" statute), as Plaintiffs' claims arise out of Defendants' transaction of business and the tortious acts within the State of Tennessee, and by virtue of Defendants' substantial, continuous, and systematic contacts with the State of Tennessee unrelated to Plaintiffs' claims.

---

[1]     Ozempic     prescribing     information,     available     at https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=adec4fd2-6858-4c99-91d4531f5f2a2d79 (visited on 9/26/23).

## NATURE OF THE CASE

17.     This is an action for damages suffered by Plaintiffs, MARK BALLARD and SHARI BALLARD, for MARK BALLARD, who were severely injured as a result of Plaintiff, Mark Ballard's, use of Ozempic, an injectable prescription medication, and/or Saxenda, an injectable daily prescription medication, that are medications each used to control blood sugar in adults with type 2 diabetes and those with insulin resistance.

18.     SHARI BALLARD suffered a loss of consortium due to the injuries of her husband.

19.     Ozempic is also known as semaglutide. Ozempic works by stimulating insulin production and reducing glucose production in the liver helping to lower blood sugar levels.

20.     Saxenda is also know as liraglutide. Saxenda works by stimulating the increase of insulin production and slowing gastric emptying.

21.     Ozempic and Saxenda each belong to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

22.     Defendants acknowledge that there are side effects of the GLP-1RA class of drugs.

23.     However, Defendants have downplayed the severity of the side effect events caused by their GLP-1RAs, never, for example, the warning of the risk of sudden blindness (NAION) and its sequalae.

24.     NAION (Non-Arteritic Anterior Ischemic Optic Neuropathy) is a condition that affects vision in the eye causing sudden vision loss.

25.     Ordinarily, individuals are able to see with complete vision access.

26.     However, in a person suffering from NAION, the vision in an eye or both eyes is suddenly impaired without warning, and the condition is often permanent.

27.     NAION can interfere with activities of daily living, affecting every aspect of an individual's life.

28.     There is no cure for NAION.

29.     Plaintiffs, MARK BALLARD and SHARI BALLARD, are citizens of the United States, and are residents of the State of Tennessee.

30.     Plaintiffs are over the age of eighteen years old.

31.     Plaintiff, Mark Ballard, used Ozempic from approximately March 2024 through December 2024.  There were time periods during this time when his use of Ozempic ceased.

32.     Plaintiff, Mark Ballard, used Saxenda from approximately from July 2024 through January of 2025. There were time periods during this time when his use of Saxenda ceased.

33.     The two medicines were not used simultaneously. The Plaintiff did have time periods during 2024 that neither medication was used.

34.     Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic that was used by Plaintiff.

35.     Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Saxenda that was used by Plaintiff.

36.     As a result of using Ozempic and/or Saxenda, Plaintiff, Mark Ballard, was caused to suffer from NAION and its sequelae and, as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses.

37.     As a result of these injuries to Plaintiff, Mark Ballard, Plaintiff, Shari Ballard, suffered a loss of consortium.

38.     As a direct and proximate result of using Ozempic and/or Saxenda, Plaintiff suffered NAION and its sequelae, which resulted in, for example, persistent sudden vision loss.

## FACTUAL BACKGROUND

### A.    FDA's Approval of Ozempic and Saxenda

39.    Novo Nordisk was able to obtain regulatory approval for both Ozempic and Saxenda from the FDA, specifically regulatory approval of injectable semaglutide and liraglutide, new glucagon-like peptide-1 (GLP-1) medications for treatment of type 2 diabetes and those with insulin resistance.

40.    In the announcements of these approvals, Novo Nordisk represented that in clinical trials, the drugs were safe, well tolerated, and with the most common adverse event being nausea.

### B. Novo Nordisk's Marketing and Promotion of Ozempic and Saxenda

41.    Novo Nordisk used the FDA approval to tout the safety of its products.

42.    Novo Nordisk promoted the safety and sale of Ozempic and Saxenda in the United States on its websites, in press releases, through in-person presentations, through each drug's labels, in print materials, on social media, and through other public outlets.

43.    Since 2018, Novo Nordisk has spent millions of dollars on television ads in the United States to promote its semaglutide and liraglutide drugs (including Ozempic, Saxenda, Wegovy and Rybelsus) with the majority of the spending allocated specifically to advertising Ozempic.

44.    In 2022, Novo Nordisk spent $180.2 million on Ozempic ads, including an estimated $157 million on national television ads for Ozempic, making Ozempic the sixth most advertised drug that year. As a result of its GLP-1RA treatments, including Ozempic, Novo Nordisk forecasts sales growth of 13% to 19% for 2023.

45.     On July 6, 2023, it was reported that Novo Nordisk had spent $11 million in 2022 on food and travel for doctors "as part of its push to promote Ozempic and other weight loss inducing diabetes drugs."

46.     The spending bought more than 457,000 meals for almost 12,000 doctors while also flying doctors to places like London, Paris, Orlando, and Honolulu.

47.     In an article published on July 21, 2023, the President and CEO of the Alliance of Community Health Plans described Novo Nordisk's spending on meals for doctors as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research about potential side effects and long-term effectiveness. The author cited research published in the spring of 2023 showing an increased risk of intestinal obstruction as a result of using GLP-1RA drugs.

48.     As a result of Novo Nordisk's advertising and promotion efforts, Ozempic and Saxenda have been widely used throughout the United States. The number of prescriptions filled reached an all-time high of 373,000 in one week in February of 2023, with more than half of those being new prescriptions.

49.     In June 2023, it was reported that new prescriptions for Ozempic had surged by 140 percent from the prior year.

50.     On TikTok, the hashtag #Ozempic had 273 million views as of November 22, 2022, and currently has over 1.3 billion views.

51.     On June 15, 2023, NBC News published a report about the "thousands of weight loss ads on social media for the drugs Ozempic and Wegovy." While many of those ads were found to be from online pharmacies, medical spas, and diet clinics, as of June of 2023, Novo Nordisk

was still running online social-media ads for its semaglutide products, despite claiming in May that it would stop running ads due to a shortage of the drug.

52.    On July 10, 2023, a global media company declared Ozempic as "2023's buzziest drug" and one of the "Hottest Brands, disrupting U.S. culture and industry."

53.    At all relevant times, Novo Nordisk was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Ozempic and Saxenda.

## C. The Medical Literature and Clinical Trials Gave Defendants Notice of NAION Being Causally Associated with GLP-1RAs.

54.    As previously noted, Ozempic (semaglutide) and Saxenda (liraglutide) belong to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

55.    Medications within the GLP-1RA class of drugs mimic the activities of physiologic GLP-1, which is a gut hormone that activates the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon.

56.    Because the risk of NAION is common to the entire class of drugs, any published literature regarding the association between NAION and any GLP-1RA (such as tirzepatide, exenatide, liraglutide, albiglutide, dulaglutide, lixisenatide, and semaglutide) should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of sudden blindness associated with these drugs.

57.    In addition to sudden vision loss effects, the published medical literature shows that GLP1s slow gastric emptying. As early as 2010, a study published in The Journal of Clinical Endocrinology & Metabolism indicated this effect.

58.    Defendants knew or should have known of this risk of NAION from the clinical trials, medical literature, and case reports.

59.    Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing NAION and its sequelae, but they ignored the causal association.

60.    Defendants' actual and constructive knowledge derived from their clinical studies, case reports, medical literature, including the medical literature and case reports referenced above in this Complaint.

61.    On information and belief, Defendants not only knew or should have known that their GLP-1RAs cause sudden vision loss, resulting in risks of NAION, but failed to advise of the warning properly for the permanency of the condition.

**D. Defendants Failed to Warn of the Risk of NAION from Ozempic and/or Saxenda**

62.    The Prescribing Information for Ozempic and Saxenda (the "labels") discloses "Warnings and Precautions" and "Adverse Reactions" but does not adequately warn of the risk of NAION and its sequalae.

63.    The Ozempic and Saxenda labels list symptoms such as nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions, but do not include these adverse reactions in its "Warnings and Precautions" section, nor does it warn that these adverse reactions are symptoms of more severe conditions, including NAION. In fact, NAION is not mentioned at all in the label.

64.    Instead of properly disclosing sudden vision loss risks, the label discloses delayed gastric emptying in the "Drug Interaction" section and notes that Ozempic and/or Saxenda "may impact absorption of concomitantly administered oral medications." These statements only describe the drug's mechanism of action and do not disclose NAION as a risk of taking Ozempic

or Saxenda, nor do they disclose NAION as a chronic condition that can result as a consequence of taking Ozempic or Saxenda.

65. Similarly, Novo Nordisk's main promotional website for Ozempic (ozempic.com) includes a variety of information about the benefits of Ozempic relating to blood sugar, cardiovascular health, and weight loss, as well as "Important Safety Information" – however, Novo Nordisk does not disclose the risk of NAION within the "Important Safety Information" section of their promotional website.

66. None of Defendants' additional advertising or promotional materials warned prescription providers or the general public of the risks of NAION and its sequalae.

67. From the date Novo Nordisk received FDA approval to market Ozempic and Saxenda until the present time, Novo Nordisk made, distributed, marketed, and/or sold Ozempic and Saxenda without adequate warnings to Plaintiff's prescribing physician(s) and/or Plaintiff that Ozempic and/or Saxenda was causally associated with and/or could cause NAION and its sequelae.

68. Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing NAION and its sequelae. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, and the medical literature, including the medical literature and case reports referenced in this Complaint.

69. Upon information and belief, Defendants ignored the causal association between the use of GLP-1RAs and the risk of developing NAION and its sequelae.

70. Novo Nordisk's failure to disclose information that they possessed regarding the causal association between the use of GLP-1RAs and the risk of developing NAION and its sequelae, rendered the warnings for Ozempic and Saxenda inadequate.

71.     On information and belief, as a result of Novo Nordisk's inadequate warnings, the medical community at large, and Plaintiff's prescribing physician in particular, were not aware that Ozempic or Saxenda can cause NAION , nor were they aware that "common adverse reactions" listed on the labels might be sequelae of NAION.

72.     On information and belief, had Novo Nordisk adequately warned Plaintiff's prescribing physician that Ozempic and/or Saxenda is causally associated with NAION and its sequelae, then the physician's prescribing decision would have changed by not prescribing Ozempic and/or Saxenda, or by monitoring Plaintiff's health for symptoms of NAION and discontinuing Ozempic and/or Saxenda when the symptoms first started.

73.      By reason of the foregoing acts and omissions, Plaintiff was and still is caused to suffer from NAION and its sequelae, which resulted in severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

## FIRST CAUSE OF ACTION

## (NEGLIGENT FAILURE TO WARN UNDER TENN. CODE ANN. § 29-28-102(6) AGAINST ALL DEFENDANTS)

74.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

75.     The Tennessee Products Liability Act ("TPLA") contains, in relevant part, the following definitions:

(4) "Manufacturer" means the designer, fabricator, producer, compounder, processor or assembler of any products or its component parts;

(5) "Product" means any tangible object or goods produced;

(6) "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service,  warning, instruction, marketing, packaging or labeling of any product. "Product liability  action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of failure to  discharge a duty to warn or instruct, whether  negligent,  or  innocent;  misrepresentation,  concealment,  or  nondisclosure,  whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever;

(8) "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. §29-28-102.

76.    The unsafe and defective Ozempic is "a product." Tenn. Code Ann. § 29-28-102(5).

77.    The unsafe and defective Saxenda is "a product." Tenn. Code Ann. § 29-28-102(5).

78.    Defendants are "manufacturer[s]." Tenn. Code Ann. § 29-28-102(4).

79.    Tennessee law imposes a duty on manufacturers of prescription drugs to market to minimize the risk of danger when producing, manufacturing, distributing, leasing, and selling their products.

80.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic that was used by Plaintiff.

81.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Saxenda that was used by Plaintiff.

82.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

82.    Saxenda was expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

83.    At all relevant times, and at the times Ozempic and/or Saxenda left Defendants' control, Defendants knew or should have known that Ozempic and/or Saxenda was unreasonably dangerous because they did not adequately warn of the risk of NAION and its sequelae, especially when used in the form and manner as provided by Defendants.

84.    Despite the fact that Defendants knew or should have known that Ozempic and/or Saxenda caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic and Saxenda to consumers, including Plaintiff, without adequate warnings.

85.    Despite the fact that Defendants knew or should have known that Ozempic and Saxenda caused unreasonably dangerous injuries, Defendants continued to market Ozempic and Saxenda to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

86.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

87.    At all relevant times, given its increased safety risks, neither Ozempic nor Saxenda were fit for the ordinary purpose for which either were intended.

88.    At all relevant times, given its increased safety risks, neither Ozempic nor Saxenda met the reasonable expectations of an ordinary consumer, particularly Plaintiff.

89.    Due to its risk of NAION and its sequelae and inadequate warning thereof, Ozempic and/or Saxenda were dangerous to an extent beyond which would be contemplated by an ordinary consumer, who had ordinary knowledge as to Ozempic's and Saxenda's characteristics, such as Plaintiff.

90.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic and Saxenda into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as NAION and its sequelae.

91.    At all relevant times, Plaintiff was using Ozempic and/or Saxenda for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

92.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including NAION and its sequelae, as well as other severe and personal

14

injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

93.    The Saxenda designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including NAION and its sequalae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

94.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including NAION and its sequalae, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Ozempic.

95.    The Saxenda designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including NAION and its sequalae, as well as other severe and permanent health consequences from Saxenda, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Saxenda.

96.    The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic, including the increased risk of NAION and its sequelae.

97.    The label for Saxenda was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Saxenda, including the increased risk of NAION and its sequelae.

98.    The label for Ozempic was inadequate because it did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

99.    The label for Saxenda was inadequate because it did not warn and/or adequately warn that Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

100.    The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

101.    The label for Saxenda was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Saxenda.

102.    The label for Ozempic was inadequate because it did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

103.    The label for Saxenda was inadequate because it did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

104.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and/or Saxenda, including the increased risk of NAION and its sequelae.

105.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Ozempic and/or Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

106.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

107.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

108.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of NAION and its sequalae, which are causally associated with Ozempic and/or Saxenda, then the prescribing physician would not have prescribed Ozempic nor Saxenda, and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic or Saxenda so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of either drug.

109.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Ozempic and/or Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, the prescribing physician would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate warnings regarding the lack of

17

sufficient and/or adequate testing of Ozempic and Saxenda so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of either drug.

110.    If Plaintiff had been warned of the increased risks of NAION and its sequelae, which are causally associated with Ozempic and Saxenda, then Plaintiff would not have used Ozempic and/or Saxenda and/or suffered from NAION and its sequelae.

111.    If Plaintiff had been warned that Ozempic or Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequalae, then Plaintiff would not have used Ozempic or Saxenda and/or suffered NAION and its sequelae.

112.    If Plaintiff had been warned of the increased risks of NAION and its sequelae, which is causally associated with Ozempic and Saxenda, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic or Saxenda.

113.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic or Saxenda due to the risks of NAION and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic or Saxenda.

114.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of an unreasonably dangerous product, Ozempic.

115.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of an unreasonably dangerous product, Saxenda.

116.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products which created an unreasonable risk to the health

of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

117.    Defendants' inadequate warnings for Ozempic and Saxenda were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

118.    Said inadequate warnings for Defendants' drugs were a substantial factor in causing Plaintiff's injuries.

119.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

120.    Plaintiff, Shari Ballard, suffered a loss of consortium.

121.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services.

122.    Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION

## (STRICT LIABILITY FAILURE TO WARN UNDER TENN. CODE ANN. § 29-28-102(6)

## AGAINST ALL DEFENDANTS)

123.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

124.    Tennessee law imposes a duty on manufacturers of prescription drugs to market to minimize the risk of danger when producing, manufacturing, distributing, leasing, and selling their products.

125.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic and Saxenda that were used by Plaintiff.

126.    Ozempic was expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

127.    Saxenda was expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

128.    At all relevant times, and at the times Ozempic left Defendants' control, Defendants knew or should have known that Ozempic was unreasonably dangerous because they did not adequately warn of the risk of NAION and its sequelae, especially when used in the form and manner as provided by Defendants.

129.    At all relevant times, and at the times Saxenda left Defendants' control, Defendants knew or should have known that Saxenda was unreasonably dangerous because they did not adequately warn of the risk of NAION and its sequelae, especially when used in the form and manner as provided by Defendants.

130.    Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

131.     Despite the fact that Defendants knew or should have known that Saxenda caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Saxenda to consumers, including Plaintiff, without adequate warnings.

132.     Despite the fact that Defendants knew or should have known that Ozempic caused unreasonably dangerous injuries, Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

133.     Despite the fact that Defendants knew or should have known that Saxenda caused unreasonably dangerous injuries, Defendants continued to market Saxenda to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

134.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

135.     At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

136.     At all relevant times, given its increased safety risks, Saxenda was not fit for the ordinary purpose for which it was intended.

137.     At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

138.     At all relevant times, given its increased safety risks, Saxenda did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

139.     Due to its risk of NAION and its sequelae and inadequate warning thereof, Ozempic was dangerous to an extent beyond which would be contemplated by an ordinary consumer, who had ordinary knowledge as to Ozempic's characteristics, such as Plaintiff.

140.    Due to its risk of NAION and its sequelae and inadequate warning thereof, Saxenda was dangerous to an extent beyond which would be contemplated by an ordinary consumer, who had ordinary knowledge as to Saxenda's characteristics, such as Plaintiff.

141.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as NAION and its sequelae.

142.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Saxenda into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as NAION and its sequelae.

143.    At all relevant times, Plaintiff was using Ozempic and/or Saxenda for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus or their precursor and in a broader application, insulin resistance.

144.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including NAION and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

145. The Saxenda designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or

instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including NAION and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

146.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including NAION and its sequalae, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Ozempic.

147.    The Saxenda designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including NAION and its sequalae, as well as other severe and permanent health consequences from Saxenda, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Saxenda.

148.    The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic, including the increased risk of NAION and its sequelae.

149. The label for Saxenda was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Saxenda, including the increased risk of NAION and its sequelae.

150. The label for Ozempic was inadequate because it did not warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

151. The label for Saxenda was inadequate because it did not warn and/or adequately warn that Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

152. The label for Ozempic was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic.

153. The label for Saxenda was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Saxenda.

154. The label for Ozempic was inadequate because it did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

155. The label for Saxenda was inadequate because it did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

156. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and/or Saxenda, including the increased risk of NAION and its sequelae.

157.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Ozempic and/or Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

158.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

159.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

160.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of NAION and its sequalae, which are causally associated with Ozempic and Saxenda, then the prescribing physician would not have prescribed neither Ozempic nor Saxenda and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and/or Saxenda so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic or Saxenda.

161.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that neither Ozempic nor Saxenda had been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, the prescribing physician would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and/or Saxenda so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic or Saxenda.

162.    If Plaintiff had been warned of the increased risks of NAION and its sequelae, which are causally associated with Ozempic and Saxenda, then Plaintiff would not have used Ozempic or nor Saxenda and/or suffered from NAION and its sequelae.

163.    If Plaintiff had been warned that Ozempic and/or Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequalae, then Plaintiff would not have used Ozempic or Saxenda and/or suffered NAION and its sequelae.

164.    If Plaintiff had been warned of the increased risks of NAION and its sequelae, which is causally associated with Ozempic and Saxenda, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic or Saxenda.

165.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic nor Saxenda due to the risks of NAION and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic nor Saxenda.

166.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic and Saxenda.

167.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

168.    Defendants' inadequate warnings for Ozempic and Saxenda were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

169.    Said inadequate warnings for Defendants' drugs were a substantial factor in causing Plaintiff's injuries.

170.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

171.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services.

172.    Plaintiff, Shari Ballard, incurred a loss of consortium.

173.    Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**THIRD CAUSE OF ACTION**

**(BREACH OF EXPRESS WARRANTY UNDER TENN. CODE ANN. § 29-28-102(6)–**

**AGAINST ALL DEFENDANTS)**

174.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

175.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic and Saxenda were safe as adjuncts to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus diabetes and those with insulin resistance.

176.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's and Saxenda's labels, websites, advertisements, promotional materials, and through other statements.

177.    As a result of Defendants' express warranties, Plaintiff's prescribing physician was induced to prescribe Ozempic and/or Saxenda to Plaintiff, and Plaintiff was induced to use Ozempic and/or Saxenda.

178.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic and/or Saxenda based upon their express warranties.

179.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic and/or Saxenda based upon their express warranties.

180.    At all relevant times, Defendants knew or should have known that Ozempic and/dor Saxenda were unreasonably dangerous because of the increased risk of NAION and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

181.    At all relevant times, Defendants knew or should have known that Ozempic and Saxenda had not been sufficiently and/or adequately tested for safety.

182.    The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

183.    The unreasonably dangerous characteristics of Saxenda were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

184.    The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

185.    The unreasonably dangerous characteristics of Saxenda were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

186.    At the time Ozempic left Defendants' control, Ozempic did not conform to Defendants' express warranties because Ozempic was an unreasonably dangerous product to use as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, diabetes and those with insulin resistance in that it was causally associated with increased risks of NAION and its sequelae.

187.    At the time Saxenda left Defendants' control, Saxenda did not conform to Defendants' express warranties because Saxenda was an unreasonably dangerous product to use as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, diabetes and those with insulin resistance in that it was causally associated with increased risks of NAION and its sequelae.

188.    The express warranties made by Defendants regarding the safety of Ozempic and/or Saxenda were made with the intent to induce Plaintiff to use the products and/or Plaintiff's prescribing physician(s) to prescribe the products.

189.    Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff to use Ozempic and/or Saxenda and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Ozempic and/or Saxenda.

190.    Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, relied on the express warranties of Defendants identified herein.

191.    Had Defendants not made these express warranties, Plaintiff would not have used Ozempic and/or Saxenda and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and/or Saxenda.

192.    Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

193.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

194.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

195.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

196.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' Ozempic and/or Saxenda drugs.

197.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

198.    Plaintiff, Shari Ballard, suffered a loss of consortium due to the injuries of her husband, Mark Ballard.

199.    Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FOURTH CAUSE OF ACTION

## (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY-

## UNDER TENN. CODE ANN. § 29-28-102(6)–AGAINST ALL DEFENDANTS)

200.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

201.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic and Saxenda drugs used by Plaintiff.

202.    Ozempic was expected to and did reach the usual consumers, handlers, and persons encountering said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

203.    Saxenda was expected to and did reach the usual consumers, handlers, and persons encountering said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

204.    At all relevant times, Defendants impliedly warranted to Plaintiff, Plaintiff's prescribing physician(s), and the medical community that Ozempic and Saxenda were of merchantable quality and safe and fit for its ordinary purpose.

205.    At all relevant times, Defendants knew or should have known that Ozempic and Saxenda were unreasonably dangerous because of the increased risk of NAION and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

206.    At all relevant times, Defendants knew or should have known that Ozempic and/or Saxenda had not been sufficiently and/or adequately tested for safety.

207.    At the time Ozempic left Defendants' control, Ozempic did not confirm to Defendants' implied warranty and was unfit for its ordinary purpose because Defendants failed to provide adequate warnings of the drug's causal association with increased risk of NAION and its sequelae.

208.    At the time Saxenda left Defendants' control, Saxenda did not confirm to Defendants' implied warranty and was unfit for its ordinary purpose because Defendants failed to provide adequate warnings of the drug's causal association with increased risk of NAION and its sequelae.

209.    At the time Ozempic left Defendants' control, Ozempic did not conform to Defendants' implied warranty because Ozempic was an unreasonably dangerous product to use as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, in that it was causally associated with increased risks of NAION and its sequelae.

210.    At the time Saxenda left Defendants' control, Saxenda did not conform to Defendants' implied warranty because Saxenda was an unreasonably dangerous product to use as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, in that it was causally associated with increased risks of NAION and its sequelae.

211.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physician(s), such as Plaintiff's prescribing physician(s), would recommend, prescribe

and/or dispense Ozempic and/or Saxenda for use by their patients to improve glycemic control in adults with type 2 diabetes, diabetes and those with insulin resistance, reduce cardiovascular risk, and/or to promote weight loss.

212.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic and/or Saxenda for its ordinary purpose.

213.    Despite the fact that Defendants knew or should have known that Ozempic and/or Saxenda causes unreasonably dangerous injuries, such as NAION and its sequelae, Defendants continued to market, distribute, and/or sell Ozempic and Saxenda to consumers, including Plaintiff, without adequate warnings.

214.    The unreasonably dangerous characteristics of Ozempic and Saxenda were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

215. The unreasonably dangerous characteristics of Ozempic and Saxenda were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

216.    Plaintiff reasonably relied on Defendants' implied warranty of merchantability relating to Ozempic's and Saxenda's safety and efficacy.

217.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Ozempic and/or Saxenda was of merchantable quality and safe and fit for its intended use.

218.    Upon information and belief Plaintiff's prescribing physician(s) relied on Defendants' implied warranty of merchantability and fitness for the ordinary use and purpose relating to Ozempic and Saxenda.

219.    Upon information and belief Plaintiff's prescribing physician(s), reasonably relied upon the skill and judgment of Defendants as to whether Ozempic and/or Saxenda was of merchantable quality and safe and fit for its intended use.

220.    Had Defendants not made these implied warranties, Plaintiff would not have used Ozempic and/or Saxenda and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and/or Saxenda, and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and/or Saxenda to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

221.    Defendants herein breached the aforesaid implied warranty of merchantability because the drug Ozempic was not fit for its intended purposes.

222.    Defendants herein breached the aforesaid implied warranty of merchantability because the drug Saxenda was not fit for its intended purposes.

223. Defendants' breaches of implied warranty of merchantability were a substantial factor in causing Plaintiff's injuries.

224. As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment,  monitoring and/or medications, and fear of developing any of the above-named health consequences.

225.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

226.    Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

227.    Plaintiff, Shari Ballard, suffered a loss of consortium due to the injuries of her husband, Mark Ballard.

## FIFTH CAUSE OF ACTION

## (FRAUDULENT CONCEALMENT UNDER TENN. CODE ANN. § 29-28-102(6) AGAINST ALL DEFENDANTS)

282.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

283.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Saxenda, which were used by Plaintiff as hereinabove described.

284.    At all relevant times, Defendants knew or should have known that Ozempic and/or Saxenda had not been adequately and/or sufficiently tested for safety.

285.  At all relevant times, Defendants knew or should have known that Ozempic and Saxenda were unreasonably dangerous because of the increased risk of NAION and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

286.    Defendants had a duty to disclose material information about Ozempic and Saxenda to Plaintiff and Plaintiff's prescribing physician(s), namely that Ozempic and Saxenda are causally associated with increased risk of NAION and its sequelae, because Defendants have superior knowledge of the drugs and their dangerous side effects, this material information is not readily available to Plaintiff or Plaintiff's prescribing physician(s) by reasonable inquiry, and Defendants

knew or should have known that Plaintiff and Plaintiff's prescribing physician would act on the basis of mistaken knowledge.

287.    Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing physician(s), Plaintiff, the medical and healthcare community, and the general public this material information.

288.    Although the Ozempic and Saxenda labels list nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in patients, such do not mention NAION as a risk of taking Ozempic and/or Saxenda, nor do they disclose NAION as a chronic condition that can result as a consequence of taking Ozempic and/or Saxenda.

289.    Ozempic is causally associated with increased risk of NAION.

290.    Saxenda is causally associated with increased risk of NAION.

291.    Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult Type 2 diabetes patients, and those with insulin resistance, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic and/or Saxenda for treatment of Type 2 Diabetes and those with insulin resistance.

292.    Defendants knew or should have known that Plaintiff's prescribing physician(s) would prescribe, and Plaintiff would use Ozempic and/or Saxenda without the awareness of the risks of serious side effects, including NAION and its sequelae.

293.    Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic and/or Saxenda, as set forth herein.

294.    Upon information and belief, Plaintiffs prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Ozempic and Saxenda.

295.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of NAION causally associated with Ozempic and Saxenda, they would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate information regarding the increased risk of NAION causally associated with Ozempic and Saxenda to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

296.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and/or Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, they would not have prescribed Ozempic and/or Saxenda and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and/or Saxenda to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

297.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Ozempic and/or Saxenda.

298.    Had Plaintiff been informed of the increased risks causally associated with Ozempic and Saxenda, Plaintiff would not have used Ozempic and/or Saxenda and/or suffered NAION and its sequelae.

299.    Defendants' fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

300. As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

301. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

302. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

303. Plaintiff, Shari Ballard, suffered a loss of consortium due to the injuries suffered by her husband, Plaintiff, Mark Ballard.

## SIXTH CAUSE OF ACTION

## (INTENTIONAL MISREPRESENTATION UNDER TENN. CODE ANN. § 29-28-102(6) AGAINST ALL DEFENDANTS)

304. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

305. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Saxenda, which were used by Plaintiff as hereinabove described.

306.   At all relevant times, Defendants knew or should have known that Ozempic and Saxenda had not been adequately and/or sufficiently tested for safety.

307.   At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Saxenda, including NAION and its sequelae.

308.   At all relevant times, Defendants knew or should have known that Ozempic and Saxenda were not safe to improve glycemic control in adults with type 2 diabetes, those with insulin resistance, reduce cardiovascular risk in patients with type 2 diabetes, or promote weight loss, given the increased risk of NAION.

309.   Nonetheless, Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic and Saxenda.

310.   Defendants represented affirmatively and by omission on television advertisements and on the labels of Ozempic and Saxenda that Ozempic and Saxenda were safe and effective drugs for treatment of adults with Type 2 diabetes, those with insulin resistance, despite being aware of increased risks of NAION and its sequelae causally associated with using Ozempic and/or Saxenda.

311.   Defendants were aware or should have been aware that its representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

312.   Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult Type 2 diabetes patients and those with insulin

resistance, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic and/or Saxenda for treatment of Type 2 Diabetes and insulin resistance.

313.    Upon information and belief that Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic and Saxenda, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

314.    Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic and/or Saxenda to Plaintiff.

315.    Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of NAION causally associated with Ozempic and/or Saxenda, Plaintiff's prescribing physician(s) would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate information regarding safety of Ozempic and Saxenda to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

316.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and/or Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, they would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Saxenda so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

317.    Plaintiff had no way to determine the truth behind Defendant's false and/or misleading statements, concealments and omissions surrounding Ozempic and/or Saxenda, and

reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

318.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Ozempic and/or Saxenda.

319.    Had Plaintiff been told of the increased risk of NAION and its sequelae causally associated with Ozempic and Saxenda, Plaintiff would not have used Ozempic nor Saxenda and/or suffered NAION and its sequelae.

320.    Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Ozempic and Saxenda for safety risks, including NAION and its sequelae, Plaintiff would not have used Ozempic and/or Saxenda and/or suffered NAION and its sequelae.

321.    As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

322.    As a direct and proximate result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

323.    Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

324.    Plaintiff, Shari Ballard, suffered a loss of consortium due to the injuries suffered by her husband, Plaintiff, Mark Ballard.

## SEVENTH CAUSE OF ACTION

## (NEGLIGENT MISREPRESENTATION UNDER TENN. CODE ANN. § 29-28-102(6) AGAINST ALL DEFENDANTS)

325.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

326.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Saxenda, which were used by Plaintiff as hereinabove described.

327.    At all relevant times, Defendants knew or should have known that Ozempic nor Saxenda had been adequately and/or sufficiently tested for safety.

328.    At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Saxenda, including NAION and its sequelae.

329.    At all relevant times, Defendants knew or should have known that Ozempic nor Saxenda were not safe and effective drugs for treatment of adults with type 2 diabetes and those with insulin resistance, given the increased risk of NAION.

330.    Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic and Saxenda.

331.    Defendants represented affirmatively and by omission on television advertisements

and on the labels of Ozempic and Saxenda that the drugs were safe and effective for treatment of adults with type 2 diabetes and insulin resistance, despite being aware of increased risks of NAION and its sequelae causally associated with using Ozempic and/or Saxenda.

332.    Defendants were aware or should have been aware that their representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

333.    Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic and Saxenda, as set forth herein.

334.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as the Plaintiff, would use and/or consume Ozempic and/or Saxenda based upon their express warranties.

335.    Upon information and belief that Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic and Saxenda, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

336.    Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic and/or Saxenda to Plaintiff.

337.    Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of NAION causally associated with Ozempic and Saxenda, Plaintiff's

prescribing physician(s) would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate information regarding safety of Ozempic and Saxenda to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

338.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and Saxenda had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, they would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Saxenda so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

339.    Plaintiff had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic and Saxenda, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

340.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Ozempic and/or Saxenda.

341.    Had Plaintiff been told of the increased risk of NAION and its sequelae causally associated with Ozempic and Saxenda, Plaintiff would not have used Ozempic nor Saxenda and/or suffered NAION and its sequelae.

342.    Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Ozempic and Saxenda for safety risks, including NAION and its sequelae, Plaintiff would not have used Ozempic nor Saxenda and/or suffered NAION and its sequelae.

343. Defendants' misrepresentations and omissions of material facts amount to willful, wanton, and/or reckless conduct.

344. As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

345. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

346. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

347. Plaintiff, Shari Ballard, suffered a loss of consortium due to the injuries suffered by her husband, Mark Ballard.

## EIGHTH CAUSE OF ACTION

## (NEGLIGENT MISREPRESENTATION UNDER TENN. CODE ANN. § 29-28-102(6) AGAINST ALL DEFENDANTS)

348. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

349.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Saxenda, which were used by Plaintiff as hereinabove described.

350.    At all relevant times, Defendants knew or should have known that Ozempic nor Saxenda had not been adequately and/or sufficiently tested for safety.

351.    At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Saxenda, including NAION and its sequelae.

352.    At all relevant times, Defendants knew or should have known that Ozempic and Saxenda were not safe and effective drugs for treatment of adults with type 2 diabetes and those with insulin resistance, given the increased risk of NAION.

353.    Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic and Saxenda.

354.    Defendants represented affirmatively and by omission on television advertisements and on the labels of Ozempic and Saxenda that the drugs were safe and effective for treatment of adults with type 2 diabetes and those with insulin resistance, despite being aware of increased risks of NAION and its sequelae causally associated with using Ozempic and Saxenda.

355.    Defendants were aware or should have been aware that their representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

356. At all relevant times, Defendants reasonably anticipated and expected that individuals, such as the Plaintiff, would use and/or consume Ozempic and/or Saxenda based upon their express warranties.

357. Upon information and belief that Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic and Saxenda, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

358. Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic and/or Saxenda to Plaintiff.

359. Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of NAION causally associated with Ozempic and/or Saxenda, Plaintiff's prescribing physician(s) would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate information regarding safety of Ozempic and Saxenda to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

360. Upon information and belief, had Plaintiff's prescribing physician(s) been told that Neither Ozempic nor Saxenda had been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, they would not have prescribed Ozempic nor Saxenda and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Saxenda so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic and/or Saxenda.

361.    Plaintiff had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic and Saxenda, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

362.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Ozempic and/or Saxenda.

363.    Had Plaintiff been told of the increased risk of NAION and its sequelae causally associated with Ozempic and Saxenda, Plaintiff would not have used Ozempic nor Saxenda and/or suffered NAION and its sequelae.

364.    Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Ozempic and Saxenda for safety risks, including NAION and its sequelae, Plaintiff would not have used Ozempic nor Saxenda and/or suffered NAION and its sequelae.

365.    As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

366.    As a direct and proximate result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

367.    Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

368.    Plaintiff, Shari Ballard, suffered a loss of consortium as a result of the injuries suffered by her husband, Mark Ballard.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants on each of the above referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiff, Mark Ballard, for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law not to exceed $3,000,000 (THREE MILLION DOLLARS);

2.    Awarding compensatory damages to Plaintiff, Shari Ballard, for loss of consortium, together with interest and costs as provided by law not to exceed $500,000 (FIVE HUNDRED THOUSAND DOLLARS);

3.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

4.    Awarding Plaintiffs the costs of these proceedings; and such other and further relief as this Court deems just and proper.

5.    Plaintiffs hereby demand trial by jury as to all issues.

6.    Plaintiffs reserve the right to amend their *ad damnum* and their complaint as further and other information becomes known.

RESPECTFULLY SUBMITTED,

HARRIS SHELTON HANOVER WALSH, PLLC

BY: /s/ Amber Griffin Shaw
        AMBER GRIFFIN SHAW (TN #026337)
        Suite 300, Hotel Lindo Building
        114 West Liberty Avenue
        Covington, TN 38019-0846
        901-476-7100.Telephone
        901-726-3984.Facsimile
        Ashaw@harrisshelton.com
        Attorneys for Plaintiffs